# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLUE SPIKE LLC, BLUE SPIKE INTERNATIONAL LTD. and WISTARIA TRADING LTD., <br><br> Plaintiffs, <br><br> v. <br><br> COMCAST CABLE COMMUNICATIONS, LLC, <br><br> Defendant. | Civil Action No. 19-159-LPS-CJB |

## REPORT AND RECOMMENDATION

In this patent infringement action filed by Plaintiffs Blue Spike LLC, Blue Spike International Ltd. and Wistaria Trading Ltd. ("Plaintiffs") against Defendant Comcast Cable Communications, LLC ("Comcast" or "Defendant"), pending is Defendant's motion to dismiss Counts I through VII of Plaintiffs' Complaint, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (D.I. 8) More specifically, Defendant moves to dismiss: (1) Counts I through III of the Complaint, which respectively allege direct, induced and willful infringement of claim 1 of United States Patent No. 7,475,246 ("the '246 patent"), claim 13 of U.S. Patent No. 8,739,295 ("the '295 patent"), and claim 8 of U.S. Patent No. 9,934,408 ("the '408 patent") (collectively referred to herein as the "Secure Server patents"); (2) Counts IV and V of the Complaint, which respectively allege direct, induced and willful infringement of claim 14 of U.S. Patent No. 7,159,116 ("the '116 patent") and claim 35 of U.S. Patent No. 8,538,011 ("the '011 patent") (collectively referred to herein as the "Trusted Transaction patents"); and (3) Counts VI and VII of the Complaint, which respectively allege direct, induced and willful infringement of claim 1 of U.S. Patent No. 9,021,602 ("the '602 patent") and claim 11 of U.S.

Patent No. 9,104,842 ("the '842 patent") (collectively referred to herein as the "Watermarking patents").[1] (D.I. 9 at 4-18) For the reasons set out below, the Motion is GRANTED-IN-PART and DENIED-IN-PART.

## I. BACKGROUND

Plaintiffs filed their Complaint on January 28, 2019, in which they allege that Defendant infringes 12 different patents. (D.I. 1) Defendant filed the Motion on April 26, 2019. (D.I. 8)[2] The Motion has been referred to this Court for resolution, (D.I. 5), and it was fully briefed on May 17, 2019, (D.I. 14).

## II. STANDARD OF REVIEW

The standard of review here is the familiar two-part analysis applicable to motions made pursuant to Rule 12(b)(6). *See Raindance Techs., Inc. v. 10x Genomics, Inc.*, Civil Action No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) (applying the *Twombly/Iqbal* standard to claims of direct patent infringement filed subsequent to the December 2015 abrogation of Federal Rule of Civil Procedure 84 and patent pleading Form 18); *see also North Star Innovations, Inc. v. Micron Tech., Inc.*, Civil Action No. 17-506-LPS-CJB, 2017 WL 5501489, at *1 (D. Del. Nov. 16, 2017). First, the Court separates the factual and legal elements

---

[1] The Secure Server patents purport to "enable secure, paid exchange of value-added information, while separating transaction protocols" and "facilitat[ing] trust in a large or relatively anonymous marketplace[.]" (D.I. 1 at ¶ 28) The Trusted Transaction patents are said to help facilitate the transfer of information between parties through the use of "sophisticated security, scrambling, and encryption technology[.]" (*Id.* at ¶¶ 29-30) And the Watermarking patents protect original digital information by combining "transfer functions with predetermined key creation." (*Id.* at ¶¶ 31-32)

[2] Defendant does not move to dismiss Counts VIII through XII of the Complaint, which relate to allegations of infringement regarding the other five of the 12 patents-in-suit.

2

of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the Court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Id.* Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

With regard to their allegations of direct infringement, Plaintiffs need to have pleaded facts that plausibly indicate that Defendant's accused instrumentalities practice each of the limitations asserted in the relevant claims. *See Raindance Techs., Inc.*, 2016 WL 927143, at *2-3. After all, if after reading a complaint, the Court cannot conclude that it is plausible that the accused infringer's product reads on a limitation of an asserted claim of a patent-in-suit, then it cannot be plausible that the accused infringer actually infringes that patent claim. *Modern*

3

*Telecom Sys., LLC v. TCL Corp.*, Civil Action No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017) (citing cases).[3]

## III. DISCUSSION

Defendant challenges the adequacy of the infringement allegations regarding seven patents-in-suit.[4] The Court will assess each of these allegations in turn.

### A. The '246 Patent

Count I of the Complaint alleges infringement of claim 1 of the '246 patent. (D.I. 1 at ¶¶ 74-90) That claim recites a "local content server (LCS) system for creating a secure environment for digital content" and includes the following limitations: (1) the LCS has a "domain processor that imposes rules and procedures for content being transferred between the LCS and devices outside the LCS" and (2) "said domain processor permitting the LCS to receive

---

[3] Plausible allegations of induced and willful infringement must include allegations plausibly asserting that the defendant has directly infringed the patent-in-suit. *See Välinge Innovation AB v. Halstead New England Corp.*, Civil Action No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2019); *Varian Med. Sys., Inc. v. Elekta AB*, Civil Action No. 15-871-LPS, 2016 WL 3748772, at *2-3 (D. Del. July 12, 2016). Here, Defendant's entire argument as to why the induced and willful infringement allegations fail as to the respective patents is that the Counts at issue fail to plausibly allege direct infringement. (D.I. 9 at 18) Thus below, the Court will solely address whether the direct infringement allegations as to each patent are sufficient. To the extent they are not, the Court will be recommending that the relevant claims of direct, indirect and willful infringement as to that patent should all be dismissed.

[4] The Court pauses here at the outset to note what it will further underscore herein: that Plaintiffs' answering brief was particularly unhelpful. Plaintiffs could have used that brief to clearly and directly answer the criticisms raised by Defendant's opening brief, and to point out precisely why the Complaint had in fact adequately pleaded that the accused instrumentalities read on certain challenged claim limitations. But for whatever reason, Plaintiffs did not do so. Instead, Plaintiffs' answering brief contained almost no substance at all on these fronts. Had Plaintiffs made any meaningful effort to actually answer Defendant's specific criticisms in detail in the answering brief, then further litigation on this subject and the need for further amendment of pleadings might have been averted.

4

digital content from outside the LCS provided the LCS first determines that the digital content being delivered to the LCS is authorized for use by the LCS . . . ." ('246 patent, col. 19:30-54)[5] Defendant argues that the Complaint fails to plead facts plausibly asserting that these claim limitations are met by the accused instrumentalities, which here are "one or more Xfinity X1 TV Boxes, [and] by way of example include Arris XG1v3, Arris XG1v4, Arris Xi6, Pace XG1v1, Pace RNG150nP2, and Pace Xi5[.]" (D.I. 1 at ¶ 76)

With respect to the first limitation at issue, Defendant asserts that although the Complaint states that "[u]pon information and belief[6] . . . [s]aid domain processor is found within the Accused Instrumentalities . . . [in that] [f]or example, various Comcast Xfinity X1 TV Boxes [hereinafter, "Xfinity Box[es]"] include a central processing unit[,]" (D.I. 1 at ¶ 82), the Complaint fails to sufficiently allege that this processing unit "imposes rules and procedures for content" or that any such content is "transferred between the LCS and devices outside the LCS."

---

[5] The asserted patents are attached to the Complaint as Exhibits A-L. Citations to the patents will simply be to the patent numbers.

[6] Frequently in their Complaint, including as to many of the disputed paragraphs discussed herein, Plaintiffs use the phrase "upon information and belief" before setting out their allegations. To the extent that Plaintiffs argue that by using this phrase, they need not fully satisfy the *Twombly/Iqbal* pleading standard, (D.I. 13 at 4-5), the Court disagrees. The United States Court of Appeals for the Third Circuit, whose caselaw is relevant as to this issue, has stated that plaintiffs may plead "upon information and belief . . . [w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control" so long as "[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (internal quotation marks and citation omitted). Therefore, even if certain information about how the accused instrumentalities work is "peculiarly within [Defendant's] knowledge or control," Plaintiffs still had to include factual allegations that make their claims of infringement plausible. Below, to the extent that the Court recommends that certain Counts should be dismissed without prejudice, this amounts to a conclusion that Plaintiffs have not met this plausibility requirement.

5

(D.I. 9 at 6 (internal quotation marks omitted)) The Court agrees. Although Plaintiffs counter by noting that the Complaint also makes reference to attached Exhibit 8 (a short article reviewing the product at issue), (D.I. 13 at 4-5 (citing D.I. 1 at ¶ 82 & ex. 8)), Plaintiffs do not explain in their pleading or in their briefing what it is about this article that suggests that the processor in question has the requisite capabilities. (*Id.*; D.I. 1 at ¶ 82 & ex. 8) The Court has reviewed the article, and after doing so, it cannot be sure that it has figured out the answer. *See Saunders v. Davis*, No. 15-CV-2026 (RC), 2016 WL 4921418, at *12 (D.D.C. Sept. 15, 2016) (granting a motion to dismiss where the plaintiff argued that attachments to his complaint "reflect[ed] facts above the speculative level" but where the plaintiff did not "explain the relevance of these attachments") (internal quotation mark and citation omitted). There must be a reason why Plaintiffs think that this article helps establish (or that for some other reason, it is likely the case) that the processor at issue works in this way.[7] In amending their pleading (as the Court will permit Plaintiffs to do, *see infra* at p. 15), Plaintiffs should just state what are the facts that make them think this is so.

As Plaintiffs' allegations in Count I are insufficient to plead a plausible claim with regard to the first limitation at issue, the Court will recommend dismissal of this Count without prejudice. Thus, it will decline to address Defendant's arguments about the second limitation at issue.[8]

---

[7] It might be, for example, that the article's reference to "record[ing]" shows to a Digital Video Recorder, (D.I. 1, ex. 8 at 3), relates to Plaintiffs' contention that a processor in the Xfinity Boxes imposes the requisite "rules and procedures." But the Court cannot be sure of this, and Plaintiffs should address the issue in a further amended complaint.

[8] In this Report and Recommendation: (1) where Defendant provides multiple reasons why Plaintiffs have not sufficiently pleaded direct infringement as to the representative

6

## B.     The '295 Patent

Count II of the Complaint alleges infringement of claim 13 of the '295 patent. (D.I. 1 at ¶¶ 91-111) That claim recites a "method for using a[n] . . . LCS" wherein the method requires various steps, including (1) "determining [by the LCS] whether said first content belongs to a different LCS domain than said first LCS domain"; and (2) "excluding [by the LCS] from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain[.]" ('295 patent, cols. 19:59-20:29) Defendant argues that the Complaint fails to plead facts plausibly asserting that these claim limitations are met by the accused instrumentalities.

With respect to the first limitation at issue, Defendant argues that when the Complaint asserts that the Xfinity Box is "configured to determine whether a given channel is part of the [user's] subscription package, and thus whether the available channels are available to the user of the Xfinity [Box] (i.e., determine whether said first content belongs to a different LCS domain than said first LCS domain)[,]" (D.I. 1 at ¶ 101), this is insufficient to plausibly allege infringement of this portion of the claim. (D.I. 9 at 8). It asserts that this is so because, *inter alia*, the Complaint "nowhere even identifies anything as the supposed 'different LCS domain' or the supposed 'first LCS domain' in the accused system." (*Id.* (citation omitted)) In their

---

claim of a patent-in-suit; and (2) where the Court finds that Defendant's argument is meritorious as to one such limitation; then (3) the Court will order that the Count be dismissed, without reviewing the other asserted bases for dismissal as to that Count/claim. As noted above, Plaintiffs will be given the opportunity to re-plead. In doing so, Plaintiffs would be wise to bolster their infringement allegations not only as to the challenged limitations that the Court addresses in this Report and Recommendation, but also as to the challenged limitations that the Court did not address. Failure to do so may result in dismissal of the relevant Count with prejudice in the future.

answering brief, Plaintiffs could have attempted to explain why this line of argument is wrong, and could have briefly set out where the in the Complaint or in the attached exhibits they *did* clearly articulate how these limitations are met. But Plaintiffs did not do so. Instead, in their briefing, they said nothing of substance in response to this argument. (D.I. 13 at 7-9)[9] The Court should not be required to guess at what Plaintiffs' allegations are, or why they are plausible. Yet here Plaintiffs have forced the Court not only to ask the relevant questions (e.g., "Is the 'first LCS domain' the entire lineup of channels available to the user? Or is it the group of channels the user actually subscribes to? Or is it something broader/narrower? Do the allegations in paragraph 97 of the Complaint have something to do with the answer? And, relatedly, what is the 'different LCS domain'?"), but to try to speculate as to what are the right answers (if any). This the Court declines to do.

As Plaintiffs' allegations in Count II are insufficient to plead a plausible claim with regard to the first limitation at issue, the Court will recommend dismissal of this Count without prejudice. Thus, it will decline to address the second limitation at issue.

C. **The '408 Patent**

Count III of the Complaint alleges infringement of claim 8 of the '408 patent. (D.I. 1 at ¶¶ 112-25) That claim recites a "method for using a[n] ... LCS ... for providing conditional access to content" wherein the method requires various steps, including (1) "determining [by the LCS domain processor] if encrypted or scrambled first content received by said LCS

---

[9] Plaintiffs did note in their briefing that the relevant paragraph of their Complaint referenced Exhibit 10 with regard to this claim element. (D.I. 13 at 8 (citing D.I. 1, ex. 10)) Yet Plaintiffs did not then do anything to explain what portion of Exhibit 10 actually answers Defendant's criticisms regarding implausibility. Defendant does not understand how Exhibit 10 fills in these blanks, (D.I. 14 at 4-5), and the Court is not sure that it does either.

communications port contains indicia indicating authenticity and storing said first content" in an LCS storage unit in encrypted or scrambled form; (2) "[determining by the LSC domain processor] . . . if encrypted or scrambled first content received by said LCS communications port contains indicia indicating lack of authenticity and not storing said first content" in the storage unit; and (3) "[determining by the LSC domain processor] . . . if encrypted or scrambled first content received by said LCS communications port contains neither one of indicia indicating authenticity and indicia indicating lack of authenticity and [then] degrading and storing the degraded first content" in the storage unit. ('408 patent, col. 20:1-32) Defendant argues that the Complaint fails to plead facts plausibly asserting that each of these three claim limitations are met by the accused instrumentalities. (D.I. 9 at 9-12)

With respect to the first limitation at issue, Defendant argues that the Complaint is deficient in certain ways. One of Defendant's arguments here is that although the Complaint alleges (regarding the "storing . . . in encrypted . . . form" portion of the limitation) that "the videos on [Comcast] channels (i.e., the first content) are stored on the [Xfinity Box] in encrypted form[,]" (D.I. 1 at ¶ 119), the Complaint fails to allege any "supporting" fact as to these assertions. (D.I. 9 at 11). The Court agrees that the Complaint does not do enough here to establish a plausible claim for infringement.

In support of its assertion that this limitation is met, the Complaint cites to page 2 of Exhibit 10 ("New Channel Lineup Frequently Asked Questions"). (D.I. 1 at ¶ 119) But nothing in Exhibit 10 explicitly addresses the issue of whether such channels are stored on the Xfinity Box in encrypted form. Nor in the Complaint did Plaintiffs make some other effort to explain why it is plausible that the Xfinity Box works in this manner. And in their answering brief,

9

instead of pointing out why the device used this type of "storing" process, or why one could easily infer this from Exhibit 10 (or other facts), Plaintiffs simply failed to address the question head on. (D.I. 13 at 9-10)

Thus, the Court concludes that the Complaint fails to plead a plausible claim for infringement as to this Count. In light of the Court's decision here, it need not address Defendant's two other arguments as to why this Count was insufficiently pleaded.

### D. The Trusted Transaction Patents (the '116 patent and the '011 patent)

Count IV of the Complaint alleges infringement of claim 14 of the '116 patent, (D.I. 1 at ¶¶ 126-40), and Count V alleges infringement of claim 35 of the '011 patent, (*id.* at ¶¶ 141-58). These claims are both to a "device for conducting a trusted transaction between at least two parties[,]" and, among other requirements, both claimed devices include "a steganographic cipher[.]" ('116 patent, col. 40:3-17; '011 patent, col. 41:11-32) Defendant argues that the Complaint fails to plausibly plead that the claim limitations are met by the accused instrumentality (here, the Comcast Xfinity Stream app), for two primary reasons. (D.I. 9 at 13-15; *see also* D.I. 1 at ¶¶ 130, 144)

First, Defendant notes that Complaint alleges that: (1) the Xfinity Stream app is available to users via the Google Play store; (2) the "best practices for securing apps available via the Google Play store are outlined in Google's Android developer's guidelines[,]" which are attached as Exhibit 17 to the Complaint; (3) therefore, Comcast's App Server makes its apps, like the accused Xfinity Stream app, available via the Google Play store in a "similar manner to the practice described in" Exhibit 17; (4) so the Court can infer that the accused instrumentality has similar procedures/components to those described in Exhibit 17; and thus (5) certain of the

10

components described in Exhibit 17 help show infringement of the patents-in-suit. (D.I. 1 at ¶¶ 130-36, 144-45, 149-54) But Defendant argues that the Complaint does not do enough to plausibly allege that Comcast actually makes use of the procedures/components described in Exhibit 17, or that these procedures/components actually disclose or amount to "best practices." (D.I. 9 at 14)

On these scores, the Court concludes that Defendant is cutting things too fine. The guidelines set out in Exhibit 17 do read as if they are meant to provide guidance to parties as to how apps should be constructed, so that the apps can work best with Google Play and allow for secure licensing transactions. (D.I. 1, ex. 17) Though the document may not use the term "best practices," it seems plausible to suggest that this is what its content amounts to, especially in light of the wording used therein and the fact that the document is associated with Google, a significant player in the industry. (*See id.* at 4 ("Designing your Policy according to the guidelines listed above is *critical*, because it ensures the *best possible experience* for users while giving you effective control over your application[.]") (certain emphasis added, certain emphasis omitted)) And to the extent that the Complaint compares the claims to what is described in Exhibit 17, (*see, e.g.*, D.I. 1 at ¶¶ 131-36, 144-45, 149-54), it also is plausible that the Xfinity Stream app works in the relevant manner articulated in this exhibit. That is, it seems more than possible that Defendant would implement what is discussed in Google's Android developer's guidelines, when: (a) that content amounts to best practices in the industry; and (b) Defendant uses Google's own Google Play Store to promote the app in question.

Second, Defendant notes the Complaint alleges that: (1) Comcast's Xfinity Stream app "employs a steganographic cipher"; and (2) this cipher is an obfuscation program similar to the

11

"AESObfuscator" that is recommended for use in Exhibit 17. (D.I. 9 at 14-15; *see also* D.I. 1 at ¶¶ 134-35, 153-54) Defendant argues that the Complaint does not allege any facts that make it plausible that Comcast actually implements what is recommended in Exhibit 17, including the use of an interface like AESObfuscator. (D.I. 9 at 14-15) Yet it does not appear that Defendant is asserting that it is implausible that the AESObfuscator (as described in Exhibit 17) could itself amount to a "steganographic cipher." (*Cf.* D.I. 14 at 7 (Defendant stating that "[I]t may be possible that Google Play Store applications employ obfuscation programs that use st[egano]graphic [ciphers][.]")) And for the reasons set out above, the Court also finds it plausible that the accused instrumentality would actually have a component like the AESObfuscator that is touted in Google's Android developer guidelines.

Thus, the Court recommends that Defendant's Motion be denied as to these Counts.

### E. The Watermarking Patents (the '602 patent and the '842 patent)

Count VI of the Complaint alleges infringement of claim 1 of the '602 patent, (D.I. 1 at ¶¶ 159-72), and Count VII alleges infringement of claim 11 of the '842 patent, (*id.* at ¶¶ 173-83). These claims are to a "computer based method for accessing functionality provided by an application software" and a "method for licensed software use[,]" respectively. ('602 patent, col. 16:2-20; '842 patent, col. 17:9-20) Both claims require either the use of a "license code" to generate "a proper decoding key" (as to claim 1 of the '602 patent) or the use of "license information" "to decode a first license code encoded in said software product" (as to claim 11 of the '842 patent). ('602 patent, col. 16:14-16; '842 patent, col. 17:17-20) Defendant argues that the Complaint fails to plausibly plead that the claim limitations are met by the accused

instrumentality (here, the Xfinity Box), for two primary reasons. (D.I. 9 at 15-18; *see also* D.I. 1 at ¶¶ 161, 175)

With regard to its first argument, Defendant notes that the Complaint alleges: (1) (as to claim 1 of the '602 patent) that "in order to maintain data security Comcast encrypts the authentication of the user's account (i.e. said license code)[,]" that "[t]ypically encryption requires the use of a key" and that "[t]herefore, in order to maintain data security, Comcast authentication software generates a decoding key for use in authorization"; and (2) (as to claim 11 of the '842 patent) "as part of the activation process the activation prompts a user for the user's last four digits of the phone number and/or a verification code to decode license information associate with the user's account (i.e., a first license code) encoded in the activation application." (*Id.* at ¶¶ 166, 179 (*cited in* D.I. 9 at 16)) Defendant notes that in support of these allegations, Plaintiffs had cited to page 6 of Exhibit 15 to the Complaint (a documented titled "X1 Activation Process Overview"). But Defendant argues that the cited page contains no information relevant to whether the Xfinity Box, *inter alia*, uses a "decoding key" or engages in "decod[ing]." (D.I. 9 at 16-17) And it argues that other portions of Exhibit 15 do not speak to this issue either.[10]

---

[10] Defendant also noted that in other paragraphs in the relevant Counts, Plaintiffs pointed to Exhibit 23 ("CableCARD: A Primer"), relating to a product known as "CableCARD," and alleged that *if* Comcast's activation application worked similarly to CableCARD, then the allegedly infringing system would utilize a "key using [a] license code." (D.I. 1 at ¶ 167; *see also* D.I. 9 at 17) The Court does not believe that Plaintiffs have pleaded sufficient facts to suggest that "[the] Cable[CARD] method has ever been used with Comcast's Xfinity[.]" (D.I. 9 at 17) But even if Plaintiffs had met that bar, their allegations as to CableCARD would not save these claims from dismissal on the ground-at-issue. That is because in their answering brief, Plaintiffs failed to make any specific statement about Exhibit 23, or provide any meaningful answer as to how that product utilizes a "decoding key." (D.I. 13 at 12-15) Although the Court can see that Exhibit 23 discusses how the described product/system utilizes encryption (and

13

Frustratingly, in responding to this argument, Plaintiffs' answering brief again made no real attempt to engage on substance. Instead of just pointing out what aspects of Exhibit 15 were said to show the use of a "decoding key" or the process of "decod[ing,]" the brief simply states that the Complaint "cite[s] numerous exhibits and explain[s] how decryption technology works." (D.I. 13 at 13) And although the Complaint does cite to page 6 of Exhibit 15 as supposedly showing how "Comcast authentication software generates a decoding key for use in authorization[,]" or uses "the user's last four digits of the phone number and/or a verification code to decode license information associated with the user's account[,]" (D.I. 1 at ¶¶ 166, 179), the citation to page 6 must be a typographical error, because nothing on page 6 of the exhibits speaks to these concepts, (*id.*, ex. 15 at 6). Page 4 of the exhibit seems like the page the Complaint means to refer to, as it discusses how a user can enter her mobile number or a verification code when using the Xfinity Box. (*Id.* at 4) Yet because Plaintiffs did not actually respond substantively to Defendant's critiques in their answering brief, the Court is still unclear as to what is said to be the relevant "decoding key," or what is the relevant "decod[ing]" process. And so, the Court cannot conclude that it is plausible that the accused instrumentality infringes the claims at issue.

---

perhaps even how it uses a "key"), (D.I. 1, ex. 23 at 1), the Court cannot be sure it understands what part of that system is said to amount to the use of a "decoding key." (D.I. 9 at 17)

14

As Plaintiffs' allegations are insufficient to plead a plausible claim with regard to this first issue, the Court will recommend dismissal of these Counts without prejudice. It thus will decline to address the second issue[11] raised by Defendant.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion is GRANTED-IN-PART and DENIED-IN-PART. More specifically, the Court recommends that all of the challenged Counts except Counts IV and V be dismissed.

Plaintiffs requested leave to amend should the Court grant any portion of the Motion. (D.I. 13 at 15) Because it is not clear to the Court that allowing the opportunity to amend would be a futile act, because this is the first time the Court has found any of Plaintiffs' claims to be deficiently pleaded, and because leave to amend should be given freely "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court recommends that dismissal be without prejudice and that Plaintiffs be given leave to file one further amended complaint addressing the deficiencies outlined above. The Court also recommends that if the District Court affirms its decision herein, Plaintiffs be given no more than 30 days to file such an amended complaint.

Dated: September 6, 2019

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[11] Defendant had also asserted that the Complaint failed to plausibly plead that the accused instrumentality included a "personalization data resource[,]" as called for by claim 1 of the '602 patent. (D.I. 9 at 17-18)